IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:16-CR-145-TWT-JKL-22 |
| THOMAS PASBY (22) | |

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

This Order and Non-Final Report and Recommendation addresses the following pending motions filed by Defendant Thomas Pasby:

- Preliminary Motion to Suppress Wiretap Evidence [Doc. 451] and Motion to Suppress Wiretap Evidence [Doc. 728]

- Motion to Sever Defendant from Trial of Co-Defendants [Doc. 691]

- Motion for Bill of Particulars and Preliminary Motion to Dismiss Indictment [Doc. 714]

- Supplemental Motion for Bill of Particulars [Doc. 946]

- Motion for Disclosure of Confidential Informants and Cooperating Witnesses [Doc. 1035]

The Court addresses the pending motions in the following order: (1) the motions for bills of particular, (2) the motion to suppress wiretap evidence, (3) the motion to sever; and (4) the motion for disclosure of confidential informants and cooperating witnesses. For the reasons that follow, Pasby's Motion for Bill of Particulars and Supplemental Motion for Bill of Particulars [Docs. 714, 946] are **DENIED**. Insofar as either motion also seeks dismissal of the indictment, it is **RECOMMENDED** that the motion to dismiss also be **DENIED**. It is further **RECOMMENDED** that the motion to suppress and the motion to sever be [Docs. 451, 728, 691] be **DENIED**. Finally, it is **ORDERED** that the motion for disclosure of confidential informants [Doc. 1035] be **DENIED**.

## I.      BACKGROUND

Pasby is charged in this case with RICO conspiracy (Count One). [*See* Doc. 1.] In connection with Count One, the indictment alleges that Pasby was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4). [*Id.* at 6, 14.] The indictment specifically alleges that beginning on or about August 5, 2013, and continuing through at least on or about September 5, 2013, Pasby and co-defendant Mangwiro Sadiki-Yisrael "caused at least twenty-six fraudulent transactions to occur that resulted in excess of $83,918 being deposited into at

least one account controlled by Pasby," all in furtherance of the RICO conspiracy. [*Id.* at 22 ("Overt Act 23").]

## II.      MOTIONS FOR BILLS OF PARTICULAR [714, 946]

### A.      Background

Pasby has filed two motions for bills of particulars.  In his first motion, Pasby requests that the government:

1. Specify and itemize the alleged fraudulent transactions that occurred, the dates of occurrence, and the dollar amounts.

2. Specify how Pasby and co-defendant Sadiki-Yisrael "caused" the alleged fraudulent transactions to occur, or the manner in which the alleged transactions were conducted.

3. Specify the account(s) allegedly controlled by Pasby in which the fraudulent monies were supposedly deposited, the dates such deposits were made, and the amounts of each deposit.

4. Specify any other alleged conspirators, whether indicted or not, who supposedly collaborated with either Pasby and/or Sadiki-Yisrael in furthering the alleged fraud, and the nature of, and dates, of such involvement.

3

5.  Specify how the alleged fraud furthered the aims or objectives of the broader racketeering enterprise alleged to exist through the indictment.

[Doc. 714 at 1-2.]

On May 19, 2017, the Government responded to Pasby's motion.  [Doc. 846.]  In response to items number 1 and 3, the government provided a summary of twenty-six allegedly fraudulent transactions, and for each identified the specific bank account number, the date, and the amount.  [*Id.* at 17-19.]  In response to item number 2, the government stated:

> [T]he transactions were the result a scheme whereby fraudulent merchant accounts were established and then payment made on fraudulent invoices against stolen credit card numbers.  In Pasby's case, he opened the two Wells Fargo accounts referenced above.  Sadiki-Yisrael would then arrange for the fraudulently obtained payments to flow into Pasby's account.  Pasby would withdraw the money and provide it to members of the conspiracy in exchange for his keeping an agreed upon portion.

[*Id.* at 18.]  In response to item number 4, the government provided a list of all co-conspirators to date.  [*Id.* at 19.]  The government explained that even though Pasby requested a list of co-conspirators only as to Overt Act 23, the government included all known co-conspirators "because a RICO defendant is to be held

4

responsible of all conduct reasonable foreseeable to him." [*Id.*]  Finally, as to item number 5, the government declined to provide any further specifics on how the alleged fraud furthered the broader aims or objective of the enterprise on the grounds that Pasby's request was an improper attempt to force the government to reveal the evidence it intends to rely on at trial.  [*Id.*]

Pasby then filed a supplemental motion for a bill of particulars in which he requested additional information based on the government's response to his initial motion.  [Doc. 946.]  Specifically, Pasby requests that with respect to the manner in which he and co-defendant Sadiki-Yisrael allegedly caused the fraudulent transactions to occur, the government provide:

    a.  a listing of those members of the conspiracy, whether indicted or not, to whom Pasby purportedly provided withdrawn monies from the subject accounts;

    b.  the amounts of such payments, itemized by each alleged recipient co-conspirator;

    c.  the amounts that Pasby purportedly kept for himself as his "agreed-upon" portion; and

    d.  the purposes for which the transferred monies were purportedly used by each recipient and how they furthered enterprise purposes.

[*Id.* at 1-2.]  In addition, with regard to the government's identification of all conspirators to date, Pasby seeks a "specific listing as to which of the alleged coconspirators so referenced collaborated or interacted with Defendant in furthering enterprise objectives, and how and when such collaboration occurred, as itemized by each collaborating co-conspirator." [*Id.* at 2.]

On July 24, 2017, the government responded to Pasby's supplemental motion.  With respect to the first set of requests, the government provided the following additional information:

> [M]oney went to, among others, Sadiki-Yisrael, Denise Carter, Arrie Freeney, Carlton King, and Kelvin Sneed. The amount retained by Pasby will be shown through witness testimony to approximate 30% of the deposited sum.   The government declines to provide an "itemization" at this point. Nor will it speculate what use the money [was] put to.

[Doc. 1002 at 13-14.]   With respect to the second inquiry, the government objected to providing any further specific information regarding the identity of the co-conspirators who interacted with Pasby and when those interactions allegedly occurred.  [*Id.* at 14.]

On August 14, 2017, Pasby filed a reply in support of his supplemental motion.   [Doc. 1059.]   Pasby contends that the government's response is "unreasonably constrained" and that without the requested information, he cannot

6

prepare a defense.  [*Id.* 1-5.]  He further argues that the government's disclosure

of unindicted coconspirators is inadequate because it contains nearly 300 names

and does not explain how or in what manner the individuals were involved in the

conspiracy.  [*Id.* at 4.]   According to Pasby, he is unable to determine which

conspirators the government maintains were personally involved with him.  He

therefore seeks to compel the government to give the names of such individuals,

the dates of interaction and the manner of involvement.  He urges the Court to

compel the government to provide the requested information, or alternatively,

dismiss the indictment.  [*Id.* at 3, 5.]

### B.    Discussion

Federal Rule of Criminal Procedure 7(f) explains that:

> The court may direct the government to file a bill of
> particulars.  The defendant may move for a bill of
> particulars before or within 14 days after arraignment or
> at a later time if the court permits.  The government
> may amend a bill of particulars subject to such
> conditions as justice requires.

Fed. R. Crim. P. 7(f).  The purpose of a bill of particulars is to inform the

defendant of the charge against him with sufficient precision to allow him to

prepare his defense, to minimize surprise at trial, and to enable him to plead

double jeopardy in the event of a later prosecution for the same offense."  *United*

*States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017) (citation omitted).  A bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial.  *See United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973).  "Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection."  *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986).

The Court turns first to Pasby's contention that the government should identity the unnamed "others" to whom he allegedly transferred fraudulently-obtained monies, the specific information concerning dates and amounts of transfers, the identity of the co-conspirators that the government contends collaborated with Pasby in furthering enterprise objectives, and the manner of such collaboration.  The Court denies those requests.  For starters, there is no dispute that the indictment sets forth the essential elements of the charged conspiracy.  Indeed, Count One alleges the existence of an alleged enterprise "whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise."  [Doc. 1 at 6-7.]  In great detail, Count One alleges the purposes of the enterprise, including, (a) enriching leaders,

8

members, and associates of the enterprise through, among other things, drug trafficking, robbery, carjacking, extortion, wire fraud, credit card fraud, insurance fraud, and bank fraud; (b) preserving and protecting the power, territory, operations and proceeds of the enterprise through the use of threats, intimidation, and violence; (c) promoting and enhancing the enterprise and its members' and associates' activities through assorted gatherings; (d) keeping victims and witnesses to crime in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and actual violence; (e) providing members safe houses in which to hide and protection to avoid apprehension by law enforcement; and (f) providing financial aid and assistance to members charged with or incarcerated for gang-related activities. [*Id.* at 7-8.] The indictment further alleges that from a date unknown, but starting no later than the year 2009, to on or about April 28, 2016, in the Northern District of Georgia, Pasby and his named co-defendants, as well as others known and unknown, conspired to conduct and participate directly and indirectly in the conduct of the affairs of said enterprise through a pattern of racketeering activity, which consisted of numerous predicate acts. [*Id.* at 8-11.] The indictment goes on to specify the roles of the defendants, including Pasby, as well as the manner and means by which members and associates of the enterprise conducted and

participated in the affairs of the organization.  [*Id.* at 11-17.]  The indictment also specifies numerous overt acts taken in furtherance of the conspiracy, including Pasby's involvement in at least 26 fraudulent transactions.  [*Id.* at 22; *see also id.* at 17-41 (alleging specific overt acts).]  As noted above, Pasby has been provided specific information concerning the dates, amounts and specific accounts for each of those transactions.

What Pasby is seeking now is additional detail concerning overt acts that he allegedly committed in furtherance of the conspiracy.  This information clearly evidentiary in nature.  Overt acts are not elements of a RICO conspiracy.  *See Salinas v. United States*, 522 U.S. 52, 63 (1997).  In a recent case, Magistrate Judge King denied a motion for bill of particulars seeking details concerning overt acts taken in furtherance of extortion and drug conspiracies, which like RICO conspiracy do not require the government to prove an overt act.  *United States v. Henley*, No. 1:16-cr-151-LMM-JFK, 2017 WL 2952821, at *16 (N.D. Ga. May 19, 2017), *report and recommendation adopted*, 2017 WL 2918954 (N.D. Ga. July 7, 2017).  In that case, the court stated that the defendant "is not entitled to an accounting of the 'overt acts' he committed in furtherance of either of the charged conspiracies"; thus, "[t]o the extent that Defendant seeks details as to dates, times, locations and actions undertaken, either by him or one or more co-

10

conspirators, in furtherance of either conspiracy, his requests exceed the proper scope of a bill of particulars." *Id.*

Here, the government has already disclosed detail as to each of the allegedly fraudulent transactions referred to in the indictment and has identified the names of five other individuals to whom the funds were transferred (not including himself).   [*See* Doc. 846 at 17; Doc. 1002 at 14.]   While the government's disclosure does not provide a full picture of the overt act in which Pasby was allegedly involved, the fact remains that he is not entitled to that information by way of a bill of particulars.  *See Henley*, 2017 WL 2952821, at *16; *see also United States v. Roberts*, No. 01 CR 410 RWS, 2001 WL 1646732, at *13 (S.D.N.Y. Dec. 17, 2001) (denying motion for bill of particulars seeking evidentiary detail "including the specific overt acts that the Government intends to prove, with a listing of dates, times, identities of co-conspirators and other details with respect to those acts").

It also appears that much of the detail Pasby seeks concerns acts in which he allegedly participated.  For example, he seeks the identity of individuals to whom he allegedly transferred funds.  The Court is not entirely convinced that the government needs to provide further detail for Pasby to prepare a defense or avoid surprise at trial.  "In a case where the evidence being sought by a bill of

11

particulars consists of activities in which a defendant participated or witnessed, the defendant could hardly have been surprised by the government's proof at trial." *Henley*, 2017 WL 2952821, at *18 (quotation marks and citations omitted).

The Court also finds that Pasby's request as to how the alleged money transfers furthered enterprise objectives has been sufficiently addressed in the indictment. The indictment alleges that Pasby committed at least 26 fraudulent transactions "[i]n furtherance of the conspiracy and to effect the object and purposes thereof." [Doc. 1 at 17, 22.] Moreover, the indictment specifies that one of the purposes of the enterprise was to enrich leaders, members, and associates of the enterprise through, *inter alia*, wire fraud, credit card fraud, and bank fraud. [*Id.* at 7.] The government has also disclosed how the fraud was perpetrated, namely, by opening fraudulent merchant accounts and using stolen credit card account numbers to make payments on fake invoices. [Doc. 846 at 18.] The government has further disclosed that Pasby opened the two Wells Fargo accounts (which have been identified in discovery) and Sadiki-Yisrael would arrange for the fraudulent payment to flow into Pasby's account. [*Id.*] Pasby then allegedly provided a portion of the funds to others who were involved

in the conspiracy, in exchange for his keeping the remainder of the funds for himself. [*Id.*]

In sum, the indictment in this case and the government's responses to the motions for bills of particulars provides Pasby with enough information to allow him to prepare his defenses, minimize surprise at trial, and enable him to plead double jeopardy if later prosecuted for the same offense. Accordingly, the motions for bills of particulars [Docs. 714, 946] are **DENIED**.[1]

## III.   MOTION TO SUPPRESS WIRETAP EVIDENCE [451, 728]

Pasby moves to suppress the evidence obtained as a result of government wiretaps, arguing that the government failed to meet Title III's requirement regarding necessity. Pasby specifically challenges wire interceptions of Target Telephones ("TT") 5 and 6 on the grounds that the affidavits supporting the applications for those interceptions defined the investigative objectives so broadly that it was a foregone conclusion that the court would conclude that it was necessary to authorize wiretaps. Pasby also challenges the intercepts of TT1 on the same grounds raised by his co-defendants in Doc. 763.

---

[1] Because Pasby's motions for bills of particulars are denied, it is **RECOMMENDED** that his alternatively-requested motion to dismiss also be **DENIED**.

The Court first addresses the motion to suppress interceptions of TT5 and TT6.  The Court then addresses the motion to suppress the interception of TT1.  For the reasons that follow, it is recommended that Pasby's motion be denied.

### A.    Motion to Suppress Interceptions of TT5 and TT6

Pasby moves to suppress wire interceptions of TT5 and TT6 on the grounds that the government failed to sufficiently establish necessity.  [Doc. 728 at 3-5.]  He contends that the government articulated impermissibly "broad and nebulous investigatory goals" and "failed to show that traditional methods of investigation would not suffice realistic goals and expectations."  [*Id.* at 3.]  The investigatory goals articulated in the wiretap applications, Pasby maintains, are so broad that they "essentially obtain unlimited information and supplant the Government's obligation of proving its case."  [*Id.* at 4.]  In other words, Pasby contends that by broadly defining the investigative goals, the conclusion that wiretap evidence is necessary becomes a "foregone conclusion."  [*Id.*]

In the support of the government's application for the initial interception of TT6, Investigator William K. Murdock provided an affidavit in which he stated that the "investigatory goals" of the investigation were to reveal:

> (a) the nature, extent, methods, and identities of the gang and associates of the TARGET SUBJECTS and others;

14

(b) the identities, locations, and roles of the TARGET SUBJECTS, accomplices, aiders and abettors, co-conspirators, and other participants in their illegal activities, including possible perpetrators of a known threat against law enforcement and extortion of a United States citizen;

(c) the distribution and transfer of funds and contraband involved in these illegal activities;

(d) the existence and location of records related to the TARGET SUBJECTS' illegal activities;

(e) the location and source of resources used to finance their illegal activities;

(f) the location and disposition of the proceeds from those activities; and

(g) the locations and items (including other telephones) that these individuals are using to further their unlawful activities . . . .

[Doc. 1021-1 at 11, ¶ 11.]  Investigator Murdock executed the affidavit on May 13, 2014, in the presence of the Honorable William S. Duffey, Jr., United States District Judge for the Northern District of Georgia.  [*Id.* at 72.]  Although the order granting the application is not in the record, the Court presumes that Judge Duffey granted the application and authorized wire interceptions of communications on TT6.

The following month, FBI Special Agent Craig J. Pfeiler provided an affidavit in support of an application for an initial interception of TT5.  [Doc. 1021-1 at 73-131.]   In his affidavit, Agent Pfeiler identified investigative

15

objectives identical to those in the TT6 application.  [*Id.* at 81, ¶ 12.]  Agent Pfeiler executed his affidavit on June 19, 2014 in the presence of the Honorable Timothy C. Batten, Sr., United States District Judge for the Northern District of Georgia.  [*Id.* at 131.]  The order granting the application is not in the record; however, the Court presumes that Judge Batten granted the application and authorized wire interceptions of communications on TT5.

Pasby does not argue that either Judge Duffey or Judge Batten erred in finding necessity based on the investigatory goals articulated in the wiretap applications.  Accordingly, the Court need not consider whether there is a basis to second-guess the issuing judges' determinations that the facts stated in the affidavits adequately established necessity.  The issue before the Court focuses solely on whether the government framed the investigatory goals of the investigation so broadly that the necessity finding was flawed.

Title 18, United States Code, § 2518(1)(c) requires that an application for a wiretap order include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  Section 2518(3)(c) requires that, before signing an order authorizing a wiretap, a district judge must find that "normal investigative procedures have been tried and have failed or

16

reasonably appear to be unlikely to succeed if tried or to be too dangerous." Investigative goals are relevant to the necessity analysis. *See United States v. Flores*, No. 1:05-cr-558-WSD-JFK, 2007 WL 2904109, *5 (N.D. Ga. Sept. 27, 2007) ("The necessity of a wiretap order is evaluated in light of the scope of the goals and the course of the investigation.").   The purpose of this so-called "necessity requirement" is "to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed." *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986).

Here, the goals of the investigation are broadly defined.  Nonetheless, the Court is not persuaded that "a broad investigation with ambitious goals is unacceptable under [Title III]."  *See United States v. Najera-Perez*, No. 1:12-CR-232-CAP-LTW, 2014 WL 888651, at *12 (N.D. Ga. Mar. 6, 2014), *adopted at* *1.  Each of the investigative goals identified in the affidavits was, as a practical matter, designed with the goal of penetrating the racketeering activity and determining the entire scope of the alleged criminal enterprise.  The affidavits identify numerous target offenses that law enforcement was investigating, including racketeering and racketeering conspiracy; production of false identification documents; wire fraud; extortion; carjacking; distribution of and possession with the intent to distribute controlled substances, and conspiracy to

17

commit the same; and violent crimes and murder.  [Doc. 1021-1 at 6-8, ¶ 9; *id.* at 77-78, ¶ 10.]   The affidavits also identify numerous target subjects, many of whom were unknown to law enforcement.  [*Id.* at 8-10, ¶ 10; *id.* at 78-80, ¶ 11.] It is therefore appropriate that the investigation would seek evidence relating to, among other things, the nature, extent, methods, and identities of gang members and associates; the identity, location, and roles of the target subjects and others acting in concert with them; how contraband and funds were being distributed and transferred; the location and source of resources used to finance the alleged criminal activity; and the location of evidence and records relating to the activities.

Indeed, other judges in this district have upheld wiretaps with similarly ambitious investigative goals.  For example, in *Najera-Perez*, the court denied a motion to suppress in which the defendant challenged the definition of the investigatory goals as overbroad.  In that case, the goals broadly included:

> (1) the identities of all of the individuals in the drug trafficking organization; (2) the current locations of the target subjects and their unidentified accomplices; (3) the present operations and scope of the drug trafficking activities of the organization in Atlanta and elsewhere; (4) the methods of importing and transporting narcotics from Mexico through Texas and/or California to Atlanta; (5) the methods of disposing of the bulk currency proceeds of drug trafficking and of laundering

18

> money to transport to Mexico drug proceeds earned by operatives in the United States; (6) the current significant customers of the organization in Atlanta and elsewhere, Mexican sources of supply, local distributors, and transportation operatives; (7) the locations where members of the organization store their narcotics and/or drug proceeds; and (8) dismantling the organization by convicting the highest level supervisors and leaders and seizing the assets of the organization and its members.

*Id.*, at *12.

Similarly, in *Flores*, a case involving the investigation of a drug conspiracy, the wiretap applications and affidavits stated that the goal of the investigation was:

> (1) the identification of all participants, (2) the identification of all locations utilized by the participants, (3) the identification of methods of operation, including importation, transportation, storage and distribution of drugs, for the trafficking organizations, (4) the identification of the methods of collection and disbursement of drug proceeds, (5) the identification of customers and the sources of supply in Mexico, and (6) the dismantling of the organizations, including the identification and seizure of assets.

*Flores*, 2007 WL 2904109, at *28, *report and recommendation adopted* at *15.

Likewise, in *United States v. Aguirre-Benitez*, a drug trafficking case,

> [t]he affidavits for the federal wiretaps specified that the investigation aimed to dismantle the entire drug trafficking organization, including ascertaining: (a) the

19

> full nature, extent and methods of the drug trafficking, importation, transportation, and distribution business; (b) the administration, control, and management of the drug trafficking business; (c) the identities and roles of accomplices, including the sources of supply; (d) the manner and means of distribution of the drugs, as well the collection of the profits; (e) the existence and location of drug records and proceeds; (f) the location and source of resources used to finance the illegal activities; and (g) the location and instrumentalities used to further these activities.

No. 3:16-cr-00009-TCB-RGV, 2017 U.S. Dist. LEXIS 80360, at *45 (N.D. Ga. Apr. 21, 2017), *adopted by* 2017 U.S. Dist. LEXIS 80109 (N.D. Ga., May 25, 2017).

The indictment in this case as well as the affidavits supporting the Title III intercepts of TT5 and TT6 allege that the Gangster Disciples is a sophisticated enterprise with numerous members engaged in a full spectrum of criminal activity.  The Court has no hesitation in concluding that the investigative goals set out in Agent Pfeiler's and Investigator Murdock's affidavits are appropriate and that the definition of those goals provides no basis to second-guess Judge Batten's and Judge Duffey's orders approving the wiretaps.   Accordingly, it is **RECOMMENDED** that Pasby's Motion to Suppress Wiretap Evidence [Docs. 451, 728] be **DENIED** as it relates to the orders authorizing the interception of wire communications for TT5 and TT6.

20

### B.      Motion to Suppress Interception of TT1

Pasby also challenges the renewal of the interception of TT1, summarizing the same grounds asserted by Defendants Kevin Clayton, Antonio Ahmad, Jeremiah Covington, Laderris Dickerson, Donald Glass, Adrian Jackson, Mangwiro Sadiki-Yisrael, Myrick Stevens, Alonzo Walton, Terrance Summers, Markell White, Shauntay Craig, and Lewis Mobely's (collectively, "Defendants") in their Joint Motion to Suppress Intercepted Communications, and Evidence Derived Therefrom, Pursuant to Title III [Doc. 763] (the "Joint Motion to Suppress").   [Doc. 728 at 5-6.]   On September 26, 2017, the undersigned recommended that the Joint Motion to Suppress be denied.  [Doc. 1134.]  Pasby does not articulate any basis for suppression other than what those Defendants have already argued to the Court.   Accordingly, it is **RECOMMENDED** that Pasby's Motion to Suppress Wiretap Evidence [Docs. 451, 728] be **DENIED** as it relates to the first order authorizing the continuation of interception of wire communications on TT1.

## IV.   MOTION TO SEVER [691]

### A.      The Parties' Arguments

Pasby moves to sever the trial against him from all other co-defendants on the grounds that he will be unduly prejudiced by the admission of evidence of

alleged racketeering conspiracy activity with which he had no involvement. [Doc. 691.]  He specifically argues that his "purported involvement with the claimed conspiracy was over a very brief period of time and essentially consisted of nothing more than a few claimed haphazard transactions done at the behest of others," [*Id.* at 1-2.]  Relying on *United States v. Pedrick*, 181 F.3d 1264 (11th Cir. 1999), Pasby submits that "a separate trial is appropriate where someone of Defendant's claimed peripheral responsibility is tried with leaders or organizers of the purported scheme," as it will be difficult for a jury to "sift through all the egregious evidence and properly assess Defendant's guilt from that of the central participants." [*Id.* at 3.]

Pasby also requests that in the event that the government produce statements of a co-defendant that inculpates Pasby, that his trial be severed from such defendants under *Bruton v. United States*, 391 U.S. 123 (1968).  [Doc. 691 at 4.]

The government responds that Pasby is properly joined as a defendant in this case under Federal Rule of Criminal Procedure 8.  [Doc. 1017.]  The government specifically points out that Pasby is a participating member of the Gangster Disciples, and is charged with causing at least 26 fraudulent transactions, which resulted in more than $83,918 being deposited into at least

one account that he controlled for the "enrichment and preservation of the enterprise." [*Id.* at 7.]  The government also states that Pasby worked in concert with others within the Gangster Disciples organization to perpetuate fraud schemes and that he held the position of "Regional Coordinator," a position of authority within the alleged enterprise.  [*Id.*]  The government also argues that Pasby has not demonstrated that he will receive an unfair trial and suffer prejudice if tried together with co-defendants.  [*Id.* at 10-13.]  To the extent there is a danger of prejudicial spillover, the government maintains, it can be cured with a cautionary instruction to the jury.  [*Id.* at 11-12.]  Finally, as to *Bruton*, the government contends that Pasby has not demonstrated a *Bruton* problem because none of the defendants has identified a co-defendant's statement that would incriminate Pasby.  [*Id*. at 13-14.]

### B.    Discussion

#### 1.    Pasby is Properly Joined as a Defendant

The Court's analysis begins with the threshold issue of whether joinder of Pasby as a defendant in this case is proper.  Federal Rule of Criminal Procedure 8(b) provides that joinder of defendants is proper "if they are alleged to have participated in the same . . . series of acts or transactions constituting an offense or offenses."  To meet the "same series of acts or transaction" requirement of

Rule 8(b), the government must demonstrate that the acts alleged are united by substantial identity of facts or participants; however, there is no requirement that each participant participate in all acts or even know the other participants' roles in the alleged activities.  *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992).

It is well-established that joinder is proper where, as here, the indictment charges multiple defendants with participation in a single conspiracy.  *See United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985).  The general rule is that defendants indicted together should be tried together, especially in conspiracy cases.  *United States v. Chavez*, 584 F.3d 1354, 1360 (11th Cir. 2009).  "Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources."  *United States v. Lopez*, 649 F.3d 1222, 1233 (11th Cir. 2011).

In this case, the indictment alleges that Pasby was a member of the Gangster Disciples [Doc. 1 at 14.]  The indictment also alleges that beginning on or about August 5, 2013, and continuing through at least on or about September 5, 2013, Pasby and co-defendant Mangwiro Sadiki-Yisrael "caused at least twenty-

24

six fraudulent transactions to occur that resulted in excess of $83,918 being deposited into at least one account controlled by Pasby." [Doc. 1 at 22 (Overt Act 23).] Rule 8(b) is a pleading rule. *See United States v. Liss*, 265 F.3d 1220, 1227 (11th Cir. 2001). Based on the allegations in the indictment, the Court concludes that Pasby has been properly joined as a defendant in this case with respect to Count One.

Having found that Rule 8(b) is satisfied, the Court next turns to whether the potential of prejudice to Pasby at trial warrants severance. Federal Rule of Criminal Procedure 14 allows for severance if it appears that a defendant will be prejudiced by a joinder of offenses or defendants. "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Eleventh Circuit has explained that "[s]everance . . . is warranted only when a defendant demonstrates that a joint trial will result in 'specific and compelling prejudice' to his defense." *Liss,* 265 F.3d at 1228 (citation omitted). "Compelling prejudice occurs when the jury is unable 'to separately appraise the evidence as to each defendant and render a fair and impartial verdict.'" *Id.* (quoting *United States v. Meester*, 762 F.2d 867 (11th

25

Cir.1985)).   Cautionary instructions to the jury are presumed to adequately safeguard against prejudice.  See *Lopez*, 649 F.3d at 1235 (cautionary instructions to the jury "ordinarily will mitigate the potential spillover effect of evidence of a co-defendant's guilt").

The Court is not persuaded that the nature and circumstances of Pasby's involvement in the alleged RICO conspiracy warrants severance under Rule 14. Pasby's concern that a jury will be unable to sift through the evidence at trial and make an individual determination of guilt as to him is a concern in virtually any multi-defendant conspiracy case where the participants have disparate levels of participation.  As the Eleventh Circuit has explained, the general rule favoring joinder of defendants who have been indicted together applies to coconspirators, even if one defendant had a minimal level of participation in the conspiracy. *United States v. Leavitt*, 878 F.2d 1329, 1340 (11th Cir. 1989) ("In a conspiracy case, coconspirators should usually be tried together; the fact that a defendant only participated in one aspect of the conspiracy does not by itself warrant severance.").  Whatever risk there may be can likely be cured through limiting instructions to the jury.  *See Zafiro*, 506 U.S. at 539.  Accordingly, at this point, the Court concludes that Pasby has not demonstrated that he would suffer such

26

compelling prejudice to mandate severance.  Pasby's motion to sever due to prejudicial spillover should therefore be denied.

### 2.    Severance Based on *Bruton* Problem

In *Bruton*, the Supreme Court held that post-arrest statements made by a non-testifying co-defendant that incriminate other defendants are inadmissible because such statements violate the other defendants' Sixth Amendment rights to confront and cross-examine adverse witnesses.   391 U.S. at 126.   As the government correctly notes, Pasby has not identified any specific statement or testimony that might be offered at trial that would create a problem under *Bruton*, nor has he identified any co-defendant who made a statement or whether such defendant is going to trial.   Accordingly, at this point, the Court is unable to evaluate the motion and the appropriateness of any remedial efforts that could be taken at trial to avoid a *Bruton* problem.  Accordingly, it is recommended that the Pasby's motion to sever based on *Bruton* be denied at this time.

### 3.    Summary

In sum, it is **RECOMMENDED** that Pasby's motion to sever [Doc. 691] be **DENIED**.   It bears mentioning, however, that severance is within the discretion of the trial judge, who must ultimately balance the efficient and orderly presentation of the case with the possibility of prejudice to defendants and the

ability to cure such prejudice with instructions.  This is a complex case involving many defendants and issues may arise as this matter moves toward trial that may justify another look at severance of this and other defendants for trial.  Although I recommend denying the motion at this stage in the proceedings, the trial judge may, of course, revisit the question of severance closer to trial.  *See United States v. Alcindor*, No. 1:05-CR-0269-TWT-CCH, 2005 WL 8148993, at *5 (N.D. Ga. Dec. 7, 2005) (denying motion for severance but noting that severance is within the province of the trial judge), *report and recommendation adopted*, 2006 WL 8426658 (N.D. Ga. Mar. 10, 2006).

## V.   MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMANTS AND COOPERATING WITNESSES [1035]

On August 5, 2017, Pasby filed an out-of-time motion seeking the disclosure of confidential informants and cooperating witnesses.[2] [Doc. 1035.] Pasby contends that in July 2017, the government asserted that the loss amount attributable to Pasby was over $500,000 (far exceeding the $83,918 in allegedly illegal transaction identified in the indictment) and that Pasby was a leader or had supervisory authority over other conspirators.  [*Id.* at 1-2.]  Pasby contends that

---

[2] Pasby represents that the motion was brought after the deadline for filing pretrial motions because he learned of the information giving him a basis to file the motion after his deadline for filing pretrial motions had passed.  [Doc. 1035 at 3 n.1.]  For good cause shown, the Court considers the motion.

the government is "relying on claims of other persons as to Defendant's asserted higher level of activity" and moves to compel the government to disclose the names of such cooperating sources.  [*Id.* at 3, 5-6.]  Alternatively, Pasby requests that the Court hold an in camera hearing with "the attorneys and the affected cooperating source(s) present."  [*Id.* at 6.]

The government responds that the sources of the information are cooperating witnesses who will testify at trial, not confidential informants.  [Doc. 1068 at 7.]  According to the government, Pasby's motion is really a motion for early disclosure of *Jencks* Act material, with respect to which the Court has no authority to compel early production.   [*Id.* at 7-8.]   The government further represents that it will abide by its policy to provide *Jencks* Act material sufficiently early to allow the defense time to prepare for the witness and it estimates that it will provide such information "about 14 days before the witness testifies."  [*Id.* at 9.]

Pasby has filed a reply in support of his motion.  [Doc. 1139.]  He accuses the government of providing only "generalistic" arguments that fail to meet the substance of his motion.  [*Id.* at 1.]  He reiterates that his request for disclosure of confidential informants seeks material information because the government now asserts a whopping increase of the loss amount attributable to Pasby from $83,000

to $500,000 based solely on the anticipated testimony of cooperating sources. [*Id.* at 2.] He also argues that since the cooperating source is a participant in the illegal activity, the Court must presume that he has met his burden of showing the need for disclosure. [*Id.* at 2-3.] Pasby goes on to argue that his defense is that he has been misidentified, and, therefore, it is important that he be given the ability to interview the witness. [*Id.* at 4.] Pasby additionally requests a joint or ex parte hearing to consider the materiality of the source's testimony to his defense. [*Id.* at 5-6.] Pasby also disputes that his request falls within the scope of the *Jencks* Act, as all he is seeking is identification information. [*Id.* at 7-8.]

As a preliminary matter, the Court agrees that Pasby is not seeking *Jencks* Act material. The *Jencks* Act, 18 U.S.C. § 3500, "mandates that a statement by a prospective prosecution witness to an investigative agent or the grand jury must be provided to the defense after the witness has testified on direct examination." *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003). As the Eleventh Circuit explained, the term "statement," under the *Jencks* Act "is a term of art" and "Congress[, in enacting the *Jencks* legislation,] was concerned that only those statements which [can] properly be called the witness' own words should be made available to the defense.... It [is] important that the statement[s reflect] fully and without distortion what had been said." *Id.* at 1252 (alterations in original)

30

(quotation omitted).  Here, the government cites no authority that holds the mere identification of a cooperating witness qualifies as a "statement" under the *Jencks* Act, and the Court has found no such authority.

It appears that Pasby's request is more akin to a request for early disclosure of the government's witness list.  It is well-settled, however, that a criminal defendant has no constitutional right to witness lists or witness statements before trial.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."); *see also United States v. Johnson*, 713 F.2d 654, 659 (11th Cir. 1983) ("A criminal defendant has no absolute right to a list of the government's witnesses in advance of the trial.").  Nor does Fed. R. Crim. P. 16 require the disclosure of the identities of government witnesses.  *See United States v. Aiken*, 76 F. Supp. 2d 1339, 1343 (S.D. Fla. 1999) ("Under [Rule 16], there is no authority requiring the Government to supply witness lists or witness statements until that witness has testified on direct examination, unless such information is required sooner by *Brady* or *Giglio*.").

The Court nonetheless has discretion to require the production of witness lists in advance of trial.  *See United States v. Elder*, No. 1:10-CR-132-RWS-AJB,

2010 WL 5656687, at *6 (N.D. Ga. Dec. 16, 2010), *report and recommendation adopted in relevant part*, 2011 WL 294507 (N.D. Ga. Jan. 27, 2011). "To obtain a witness list, a defendant must show that the 'list would be material to the preparation of the defense.'" *Id.* (quoting *Downing v. United States*, 348 F.2d 594, 599 (5th Cir. 1965)).

Although the Court appreciates Pasby's desire to investigate the relationship (if any) between the cooperating sources and him, the bases for the witnesses' anticipated testimony, and their credibility, these concerns are not unique to Pasby.  In addition, the government represents that the cooperating witnesses are expected to testify at trial and that it will provide *Jencks* Act material pertaining to witnesses around 14 days before the witness testifies.  So, at a minimum, Pasby will have at least two weeks' notice of the identities of the cooperating witnesses—and perhaps even more depending on when the government discloses its witnesses for trial.  Accordingly, in the absence a legal basis for requiring the government to identify at this stage of the proceedings a cooperating witness who is expected to testify at trial, the Court will not require early disclosure of cooperating witnesses or information related to those witnesses.  *See United States v. Pineda*, No. 1:11-CR-006-CAP-JFK, 2012 WL

2906758, at *44 (N.D. Ga. June 4, 2012) (denying request for pretrial disclosure of confidential informants on similar grounds).

Nor does *Roviaro* require that the government identify the identity of the cooperating source(s).[3]  For starters, it is not entirely clear whether *Roviaro*, applies to cooperating witnesses who have not acted as government informants. *Cf. United States v. Nieves*, No. 3:97CR238(AHN), 1998 WL 928413, at *2 (D. Conn. Dec. 3, 1998) ("*Roviaro* . . . , does not require the government to present its cooperating witnesses to the defendant for interviews.  *Roviaro* only stands for the proposition that the government must, under certain circumstances, disclose

---

[3] In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court held that under some circumstances the government must disclose the identity of confidential informants.  The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement."  *Id*.  But where the disclosure of an informant's identity or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the trial court may require disclosure.  *Id*. at 60-61.  In balancing these interests, the Court must take into account "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony."  *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991).  Courts in this Circuit consider the following three factors in evaluating whether the government should be required to reveal the identity of informants: "(1) the extent of the CI's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the CI; and (3) the government's interest in nondisclosure."  *United States v. Razz*, 240 F. App'x 844, 847 (11th Cir. 2007) (citing *Gutierrez*, 931 F.2d at 1490).

the identity of an informant.").  But even if *Roviaro* does apply to cooperating witnesses, the Court notes that *Roviaro* would not require early disclosure or in camera review because the government has indicated it intends to call the witnesses at trial, and, therefore, Pasby will have the opportunity to examine the veracity of the witness.  *See Banks v. Dretke*, 540 U.S. 668, 697 (2004) ("The issue of evidentiary law in *Roviaro* was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does *not* call as a trial witness."); *United States v. Rook*, No. 1:15-CR-380-SCJ, 2016 WL 2344877, at *3 (N.D. Ga. May 3, 2016); *Pineda*, 2012 WL 2906758, at *44 ("Neither the Federal Rules of Criminal Procedure, *Brady*, the Jencks Act, or *Giglio* require the disclosure of information related to a testifying witness any earlier than the Government has offered to make disclosure in this case.").[4]

---

[4] Citing *United States v. Hailey*, 1:15-cr-332-ELR-LTW, 2016 U.S. Dist. LEXIS 169135 (N.D. Ga. Oct.  24, 2016), Pasby further contends that the government "misreads controlling precedent" and that "the question is not whether the informant will testify at trial, but rather whether the informant pla[y]ed a crucial role in the transaction."  [Doc. 1139 at 5.]  Pasby goes on to argue that "it is hard to imagine how the sources could have implicated Pasby without themselves participating," and requests that the Court hold a hearing, either ex parte or jointly, for the court to make a determination under *Roviaro*. [Doc. 1139 at 6.]  *Hailey* is distinguishable.  In that case, the government had not yet made a determination as to whether it would call a confidential informant as a witness.  *Hailey*, 2016 U.S. Dist. LEXIS 169135, at *32.  Here, by contrast, the

For these reasons, the Court **DENIES** Pasby's Motion for Disclosure of Confidential Informants and Cooperating Witnesses [Doc. 1035].

## VI.   CONCLUSION

For the foregoing reasons, Pasby's Motion for Bill of Particulars and Supplemental Motion for Bill of Particulars [Docs. 714, 946] and his Motion for Disclosure of Confidential Informants and Cooperating Witnesses [Doc. 1035] are **DENIED**.  Insofar as either motion also seeks dismissal of the indictment, it is **RECOMMENDED** that the motion to dismiss contained in the first motion for bill of particulars be **DENIED**.  It is further **RECOMMENDED** that the remaining motions [Docs. 451, 728, 691] be **DENIED**[5]

There are no matters pending for Defendant Pasby (22), and the Court has not been advised of any impediments to the scheduling of a trial as to this

---

government has represented that it will call the source as a witness.  [Doc. 1068 at 7.]

[5] Pasby has filed a Motion to Suppress Statements and Request for Jackson-Denno Hearing [Doc. 450], which has been **DEFERRED** to the trial judge.

defendant.    Accordingly,   this   matter   as   to   this   defendant   is   **CERTIFIED**

**READY FOR TRIAL.**[6]

      **IT IS SO ORDERED, RECOMMENDED, and CERTIFIED** this 4th

day of October, 2017.

_____

JOHN K. LARKINS III
United States Magistrate Judge

---

[6] Since matters pertaining to Pasby's codefendants still are pending, the District Court is not required to place Pasby's case on the trial calendar at this time.  18 U.S.C. § 3161(h)(6).